Mr. ROSENTHAL May it please the Court, I am Paul Rosenthal of Kelly Dry and Warren on behalf of the domestic industry of the plaintiffs. Withhold just for one second Mr. Rosenthal. I think Mr. Rosenthal will need 20 minutes. Can we start over again? Thank you. A second, we'll get the seconds right. Now let's begin again. Thank you. For the record, my name is Paul Rosenthal of Kelly Dry and Warren. We're counsel for the domestic industry of the plaintiffs appellants in this case. As you know, the anti-dumping law requires that the foreign producers, when found to be dumping and injuring the domestic industry, have duties paid for the protection and remedial effect that will have on the domestic producers. It's a very elaborate statutory scheme that this Court has seen a number of times. There is one purpose only for this statutory scheme and that is to help injured domestic industries. This is well understood by this Court. And here, the Treasury Department, the General Accounting Office, Accountability Office, the Bureau of Customs and Border Protection have all acknowledged that with regard to the plaintiffs in this case and the four anti-dumping orders involved here, hundreds of millions of dollars have gone uncollected. In other words, the remedial purpose of the law has not been achieved with respect to the plaintiffs in this case. Because the violators went bankrupt. I mean, that happens rather often in our economy, doesn't it? Well, we don't know why that is. In fact, that is one possibility. You cited the GAO report. It said that precisely. Well, it said that among other things, but it also said, and by the way... The point is you want to shift the blame to the government, that somehow the government made every error that you could think of to blame them for making. And the GAO seems to find that it has... There are plenty of causes other than government mistakes for this lack of collection, as you call it. Actually, the GAO report points to several errors that have nothing whatsoever to do with the bankruptcy or the fleeing of the importers who owe the duties. The GAO report points directly at errors by the government, by the Commerce Department, by the Customs Service. In fact, what you see from the GAO report is that those two agencies are pointing fingers at one another for those failures. But Mr. Rosenthal, in any event, you don't have standing to sue the Court of International Trade and to sue the government and the Court of International Trade. Indeed, we do, Your Honor. We have injury in fact, which is what is required in Iqbal. We have economic harm to us as found in your... But the court was wrong to decide that there was supplemental jurisdiction under 1367 because they're not a district court. Well, that is the issue before this court. The court went through a very interesting and I think a correct determination that 1367 applies here because of the Customs Court Act of 1980, which gave the CIT all the powers of law and equity of a district court. Is the difference between having power when you have jurisdiction and not having jurisdiction at all? Well, I think the court below, in one of the areas that we happen to agree with their analysis, what got it right, that in fact, the Customs Court Act and the 1367 have to be read in harmony with one another. When 1367 was enacted in 1990, the understanding was that... And that gave supplemental jurisdiction to district courts. The understanding was... To district courts. To district courts. The understanding was that the CIT as the only Article III court other than a district court was to be treated in the same fashion. And if Congress had any other intent in mind, it would have done that. But I want to make sure you understand. I think you do. Can I just ask you to clarify just... Am I right that the questions of supplemental jurisdiction and third-party beneficiaries are questions that arise solely with respect to the sureties in this case? That was the point I was going to make to Judge Lurie. If I could ask you about that then. If we were to conclude that there was no supplemental jurisdiction with respect to the sureties, are we therefore left then with claims 8 through 15 and the other claims go away? Yes, you... If we were to agree with the CIT that it has jurisdiction, but that they are not third-party beneficiaries, are we still left with only those same claims, 8 through 15? That would be correct. And I would argue as well that if you should conclude that there is no 1367 jurisdiction, that you should also look at an overlooked analysis of pending jurisdiction that we believe has been overlooked by the lower court as well. I don't think we need to take the time here,  to analyze the Supreme Court decisions and jurisdiction. Can I go back to the Chief's questions early on? With respect to the... I mean, the statutory provision you're relying on is the fees provision, right? 1675C, where... That's your hook here, right? Because you get the fees that are collected. Well, that is in terms of... Are you talking in terms of the third-party beneficiary? No, no, no, I'm sorry. I'm back to the government. Okay. Let's look at the government. I would argue, Your Honor, that is not the total reason for reliance. In fact, my law firm has sued the government for failure to collect duties well before the Continuing Dumping and Subsidy Offset Act was enacted. If you look at counts eight and nine of our complaint, which deal with failure to issue liquidation instructions and failure to execute those instructions, those ministerial acts, we believe that we have a right to sue regardless of wherever those duties go because the statute is intended to benefit and to remedy the unfair trade practices. But do you have a right to compel the government to liquidate on a particular schedule? We have a right to compel... Under the Administrative Procedure Act, we have a right... The Act perceives that there will be an automatic liquidation at some point. What we are saying is that we do have a right to sue there. These are ministerial acts. And in fact, in the international trading case... That's really your point. You want them to do it on a particular schedule, but even the Act doesn't contemplate a schedule. It says if they don't get around to it, there's an automatic liquidation. There is a right to take action under the APA to compel agency action unlawfully denied to force the agency... How is it unlawfully denied if there's no schedule set in the Act for them to take acts? And in fact, the Act perceives that if they don't take it, there is an automatic remedy. As I said, the law provides that parties can seek to get agencies or compel agency action that has been unlawfully or improperly denied. How is it unlawfully denied? Because the law requires the liquidation notices to be... And this is where I think the lower court is a little confused about the deemed liquidation question too. And we were not contesting that. We understand under international trading and other cases that by operation of law, the amount of duty will be fixed through this deemed liquidation provision. Our harm is that until the Commerce Department issues liquidation notices and until the Customs Service actually acts on those, we do not get the remedial benefit of the law. Your question is, well, can they wait 10 years, 15 years? Because there's no statutory deadline in the law that says when they have to issue their notices. Therefore, they can continue forever under that theoretical line of questioning. Our position is, no, they can't. Because at some point, we are allowed to under normal administrative procedure act jurisprudence that says agencies may not deny or fail to act and act ministerially when doing so causes harm to the parties before them. I don't believe the question here is whether or not the failure to act really denies relief to the petitioning party. And I understand that there's a question about pointing to a particular deadline. I was going to ask you about that because under the APA, which you cited, there's a requirement that you identify a discrete agency action. And you clearly failed to do that here, at least arguably with the exception of maybe one claim, right? Well, and that's actually the heart of the question is what does it take to qualify as a discrete agency action? We don't agree with the government's characterization of what is discrete. We don't believe that discrete and spoken of in terms of the Lujan case or other cases involving standing that you have to identify the particular date, the particular entry to qualify this as discrete. What we understand the Lujan case and others did mean as discrete is as being a ministerial act as a particular act or kind of act, not necessarily identifying the day and or entry. But even on looking at Tuomly then, I mean, you've got to identify what happened. The only limits, as I understand, so you can tell me if I'm wrong, to the claims you've made are an eight-year period, you know, some long period of time identifying a huge number of transactions. Don't you think that you're required under precedent to identify with more particularity than that? No, and the clear answer in my view is no. Looking at Tuomly, looking at Rule 8, which it is trying to interpret and looking at the subsequent cases, Tuomly basically and Rule 8 say, you want to give fair notice of what the claim is and the grounds on which it rests. And we feel that we have done more than fair notice. I mean, not only fair notice and the grounds on which it rests, also to address the question by Chief Judge Rader, we recognize that there are some innocent explanations for why some of these acts may not have been taken and why some of the duties might not have been collected. But we've tried to identify plausible, which is what Tuomly says, plausible acts that the government took that give a reason for us to be able to go forward and complain. We've done that in this complaint. Where's the plausibility? Where's the plausibility that we should assume the government acted illegally? Well, let me refer to the GAO report. The GAO report, one of the several reports issued by the government, essentially says that Customs Office of Chief's Counsel was at the time, this is in 2008, after several other reports preceding it, at the time assessing $290 million in unpaid anti-dumping duty bills and said, quote, this office may take additional collection actions such as sending importers and sureties formal demands for payment and referring the case to the Department of Justice. Our view on that is that there are certain provisions such as the provision that we allege in count 15, which is a ministerial act, 19 CFR requires the Customs Service to do so within 90 days, refer to the Justice Department claims for prosecution. This fact, they are contemplating acting or not acting, violates 19 USC 13.52 because that regulation compels action after 90 days has elapsed. It doesn't compel the Justice Department to prosecute. That's completely within the discretion of the government. But it does compel notices to be taken there. And if there hasn't already been a protest or measures satisfactorily initiated to resolve the matter. There are other citations and we're... Mr. Rosenthal, how do you deal with the point that Judge Post just made? I think in reference to the Heckler case from the Supreme Court, that it's beyond judicial review if an agency declines to enforce. I understand the arguments on Heckler by the government and the question here. Heckler does not say that whenever there might be prosecutorial discretion involved, there's no way you can have judicial review. Heckler clearly says that a decision not to enforce can't be reviewed. But there are... The rest of Heckler talks about how if there is law to apply, if discretion is not totally unlimited, there can be judicial review under the APA and other statutes. What we're saying here is that customs has regulations, customs has statutes that it has to abide by before it decides to write off bills. And we cite these in our complaints actually. What we say is... If you look at the law to apply... Hang on, I want to give you the proper citations here. There is the Debt Collection Act. There's 19 U.S.C. 1631 that provides that before indebtedness arising of the customs law, I know the U.S. government can be written off as uncollectible. Among other things, the customs service is required to enter contracts and incur obligations for collection services. So there are steps, there are provisions of law that customs has to abide by. They can't just decide to do things on their own. We've been discussing count 15, which gives them this 90-day limit to refer things to justice. But customs could settle the matter short of referring it to the Department of Justice and then the Department of Justice could decline to enforce. Both of those are instances which you really couldn't contest. Actually, the first one we can contest and we have in this complaint because in the reorganization plan of 1979, the Congress specifically transferred the ability to settle customs duties or anti-dumping duties from the customs service to the Commerce Department. So if customs on its own is settling duties, it has violated the law. That is one of our complaints. They are not allowed to do this willy-nilly on their own. And if you look at the GAO reports, you look at these other reports, it looks like they're deciding when they want to do things and acting as if they have unfettered discretion. Our point is they don't have unfettered discretion and there should be judicial review to at least make sure that they are abiding by the restrictions that Congress has imposed and they've imposed themselves by regulation before they take these actions. Can you point to any instance where they have neither settled nor referred to the Department of Justice? One of the problems we have here, Your Honor, is that we're at the pleading stage. We filed our complaints. We should, or I would argue, be having this conversation or this argument perhaps after the summary judgment stage and after we've had discovery. It's unfair in many ways for the Commerce Department and Customs to have this information at their disposal and without us having access to this in discovery to have that specific information. But I will tell you this, because this is public information, there have been reports that the Customs Service has written off millions of dollars worth of bonds. I'm trying to find the... Yeah, the Office of Chief Counsel said that 290 out of 350 million are unpaid because of the declared bankruptcies. No, he doesn't say that. He says, because many of the importers involved here have disappeared, have no assets, or have declared bankruptcy, quote, unquote. But let me find the other citations there. That disappeared, no assets, or bankruptcy. That accounts for some of that. Here is what... He says that most of... So his claim is after that is most of the... will be written off after proper legal review. Number one, he does not have the right as the Customs Service to compromise duties in many instances because those happen to be the Commerce Department's province under 1617 as transferred to the Commerce Department. And I think it's a proper area for judicial review to find out what was Commerce doing and what was Customs doing. And were they... I'll save your last minute. Yes, please. Thank you. Mr. Preheim. Good morning. May it please the Court. The Court should affirm the decisions of the Court of International Trade in this case. Chief Judge Rader, as you noted, there are many reasons why duties have not been collected with respect to these orders. We have a retrospective system of collecting duties which... Can I ask you just a technical question that reflects my ignorance, perhaps, about all of this terminology? When an import's deemed liquidated, can Customs then go out and collect it without any notification by Commerce? With respect to... Yes, yes. Once deemed liquidation occurs, Customs could... Yes, I'm not aware of any law that would prevent Customs from doing so. I agree. Sorry to interrupt. No, that's all right. In any event, my point was simply that, as Chief Judge Rader, as you noted, there are lots of reasons why duties aren't collected. Sometimes we have sureties that are in bankruptcy. Sometimes the bonds don't cover all the duties. Sometimes duties are being protested. As Washington International notes in its brief, the government has, in fact, filed a number of collection actions, but obviously those actions are still pending. But rather than address the problems with a retrospective system in the halls of Congress or directly with the agencies, Sue Honey has filed this lawsuit. And regardless of whether one views the complaint through the prism of standing or through the prism of the APA or through Twombly and Iqbal stating a claim, the complaint is simply deficient. It doesn't identify any concrete and particularized agency action. It doesn't identify any discrete agency action under the APA. Rather, it's a broad programmatic challenge. Well, that's kind of true with respect to most of the claims as I read them. But what about COUNT 15? I'm sorry. There they have identified a particular action involving Harcourt, right? In the complaint itself? Yes. I'm not sure that's correct. I mean, you know this stuff better than I, but that's the way I read it. COUNT 15? No? I'm looking at COUNT 15, Your Honor, right now. You should take it very quickly. I don't want to belabor this. Well, my understanding of COUNT 15... They have 90 days to refer it to Department of Justice is what they... Yes, I don't believe they actually cite any specific instance, Your Honor. Based on information and belief, Customs has issued one or more demands to surety defendants that are now final. For example, defendant Harcourt has admitted that Customs demanded performance. Well, are final as to it, but they don't provide any evidence that Customs has failed to provide justice with any notice. I see. In other words, they don't provide a single instance of when that's occurred. What about COUNT 10? To the extent that COUNT 10... I mean, on the very limited point, which is the statute says, once you collect the money, you have to give it to the domestic industry. And don't they allege in COUNT 10 that you've... Only in the point where money has been collected. We're not getting into the point you and the Chief discussed about what Commerce or Customs is able to do. But once you've collected the money, isn't that kind of a discreet violation? For you all not to turn it over? I think this is where Sue Honey misunderstands our argument. We're not saying that the government doesn't take discreet actions. Commerce and Customs take hundreds, probably thousands, perhaps millions of discreet agency actions. We're saying you haven't told us what they are in this case. Tell us when Commerce has failed to issue liquidation instructions. Tell us when Customs has failed to issue a demand on a bond. Or tell us when you think Customs hasn't referred a matter to justice and they haven't done so. Does any lay person have access to that kind of information? Well, let me make a couple points in response to that question. First, they never even attempted to submit a FOIA request. They never even made that effort. I actually thought there was some FOIA stuff in the record. Well, I think it was from other cases. And in fact, I think if you look at that information, it shows that they can obtain certain information from Customs. I think it was a FOIA request to Customs. But in any event, if you look at the Twombly and particularly the Iqbal case, in Iqbal, the party asked for discovery. And what the Supreme Court said was, you are not entitled to discovery until you've presented a plausible complaint. Discovery comes later in the process. You have to show plausibility first and foremost. So even if you can't find this information or don't know it, that doesn't mean that you have a plausible claim. And moreover— Could you still answer my question about whether or not most of the information we're talking about is accessible to the public? Well, I guess it would depend on what specific information was being requested. I mean, I will say, keep in mind that many of the parties, Sue Honey, were either involved in the New Shipper Reviews or could have been involved in the New Shipper Reviews. So they know the folks at Commerce who are conducting the reviews. Pick up the phone and call them and ask if liquidation instructions were issued, for example. I suspect you'll get an answer. Can you speak for the government on whether or not the Court of International Trade is a district court with supplemental jurisdiction authority? It's not, Your Honor. The Court simply didn't possess jurisdiction to entertain the case against the sureties here. Now, in its reply, Sue Honey focuses on the Rowan Poulon case, but they miss a lot of the other points that we made, which are that the words power and jurisdiction mean something different. The Customs Court Act actually uses those words differently. There's also a separate provision, 28 U.S.C. 1583, that actually sets forth the Court of International Trade supplemental jurisdiction. This case doesn't fall within that. There's no dispute in that regard. Moreover, you would have an absurd result if you interpreted the word all powers to mean that the Court of International Trade has the jurisdiction of district courts. It's a court of limited jurisdiction. But turning to the Rowan Poulon case, what this court said in Rowan Poulon was, and the idea that Rowan Poulon has nothing to do with the language of 1585, which is what Sue Honey suggests in its reply, that is simply not true. Rowan Poulon was looking to the exact same language that we are looking to here, the language in the statute in 1585 that grants the Court of International Trade all the powers in law and equity of or as conferred by statute upon a district court. And what this court said is, there's a fundamental distinction, a fundamental distinction between a court's subject matter jurisdiction and its equitable powers. The former must exist before the latter may be exercised. The former concerns the authority of a court to hear and decide, given the subject matter of the case. The latter concerns the remedial relief, a court having that authority may grant. So the idea that power and jurisdiction are the same is simply not true under this court's precedent, under the statute, and under common sense. Just briefly to address a few other points that were made, counsel focused on the argument that they make that the customs does not have the authority to settle matters. We in our brief dispute that, but moreover, how were they harmed by commerce settling cases as opposed to customs, even assuming they had identified discrete instances where that occurred? How were they harmed by that? They never provide any information in that regard. So with respect to count 11, and I'd like to use this as an example to show why the complaint is deficient. Count 11 is the claim that customs failed to issue demand letters to sureties. Well, we attached an affidavit to our motion to dismiss before the trial court from a customs official and the affidavit said, customs is not aware of a single instance where we failed to issue such a demand. Now, in its response brief, Sue Honey said, well, we don't contest that statement, but there was still a risk, and that was the word Sue Honey used, a risk, that one of the hundreds of ports over the last 10 years that dealt with these entries had perhaps lost or misplaced a bond at some point in time. Now, how could we possibly respond to a claim like that? What do they want us to do? What do they want customs to do? How could we search for a lost bond that we don't even know was lost? And what would be the administrative record in a case like that? This is an administrative record case. We have to put together, the agency has to put together, and we have to file the record. How would we do so in a case like this, particularly with counts like count 11? Moreover, as we pointed out in our brief, if one looks to the request for relief, Sue Honey has simply failed to plead that it's likely, as opposed to speculative, that the issue, that the injury they alleged to have suffered can be redressed by a favorable decision, and they don't really respond to this point in their reply. They want an order holding unlawful and setting aside customs failure to act upon liquidation instructions, and they want an order telling customs to cease failing to act on those instructions. Well, how will that order? We already know that customs is supposed to act on those instructions. How will that order make any difference here? Graham, your time has expired. We respectfully request that the Court affirm the Court of International Trade's decisions. Thank you. Thank you. Mr. Cohn. Thank you, Your Honor, and may it please the Court, I'm Jonathan Cohn for the Hartford Appellees. As the trade court held, all the claims against the surety defendants are meritless, because every one of these claims relies upon the same erroneous premise that plaintiffs are intended third-party beneficiaries of the bond contracts. If this court reaches the merits, and we've heard from the government correctly why the court should not reach the merits of these claims, but if the court reaches the merits, it should affirm, because plaintiff's premise is wrong for three reasons. First of all, the bond— In other words, they need to win on two points, that there is supplemental jurisdiction, and that they're third-party beneficiaries. That is absolutely correct, Judge Warren. They have to win on both points to get relief against the sureties, both jurisdiction and the merits, and they're incorrect on both points. On the merits point, the trade court got it precisely correct that plaintiffs are not intended third-party beneficiaries, and there are a number of reasons. First and foremost, these bond contracts are completely silent as to any intention to benefit the domestic producers. Not a single word about the domestic producers. And this court should not infer intention from complete silence. Second, plaintiffs do not receive any direct benefits from these contracts. If they receive any benefits at all, as alleged, it's only indirect through the government as a result of the Byrd Amendment. And third, the Supreme Court recently decided ASTRA and made clear that contract claims should not be used to circumvent the lack of a private right of action, and the underlying contracts have no private right of action against the surety companies, and that's dispositive. Congress did not create a cause of action, and with respect, this court should not provide what Congress did not create. Intended third-party beneficiary status is an exceptional privilege. Plaintiffs have a heavy burden, and they've not met that burden. The trade court got it precisely correct. And on jurisdiction, with respect, the trade court erred because there is no supplemental jurisdiction here. The only supplemental... So where does jurisdiction lie? It might lie in federal court or state court, depending upon whether there's a federal question. The contract claim could be viewed as a federal common law question or a state question. There could also theoretically be... So even though you all have already won here, at least at the CIT, you want to do this over in another court? Oh, we don't, Your Honor, and we prefer a decision on the merits. And there's one way... Oh, I thought you were preferring a jurisdictional decision. Well, for pragmatic reasons, understandably, we prefer the merits decision. And with respect, the court does, can reach the intended third-party beneficiary issue in the claims against the government. Counts 1, 6, and 12 against the government also raise that issue. And the supplemental jurisdiction concern, of course, doesn't apply to the government. So the court can still reach that merits issue and affirm the trade court for any number of reasons on the merits issue. And that merits ruling would serve us very well and prevent plaintiffs from filing the exact same action in either federal court or state court. But for plaintiffs to get relief against the surety companies as Judge Laurie pointed out, they have to win on two separate issues, one jurisdiction, two merits, and they cannot prevail on either one. Unless this court has further questions for me, I'm happy to see the rest of my time and rest in the briefs. Thank you, Mr. Cohn. Ms. Viscoso? Viscoso, Your Honor. Viscoso. Good morning, Your Honor. May it please the court, as I said, my name is Mary Kay Viscoso, and I represent Washington International. But for purposes of our discussion this morning, I'm speaking on behalf of all of the surety defendants other than the Hartford for whom Mr. Cohn just spoke. And I join in Mr. Cohn's arguments with respect to the third party beneficiary point. And so I won't belabor this morning and repeat anything that he said. Oddly, though, I find myself in the circumstance where on the jurisdictional point, I agree with the arguments that were advanced to the court by Mr. Rosenthal. And I do believe that there is supplemental jurisdiction for the CIT to have addressed the third party beneficiary point. I have to be candid with the court. This jurisdictional question, first of all, it's somewhat unsettled. And second, it's a bit confusing in the sense that the claims against the surety defendants are counts one through six of the complaint. With respect to counts two, three, four, and six. At the end of the day, what the court below found was that they almost reached the merits and put the cart before the horse in a sense. But it must be done that way because where the court came out on those counts was that there was no standing by the plaintiffs to challenge anything regarding the bonds because they have no standing. They are not third party beneficiaries. A finding that there's no standing means that there's no article three case or controversy and therefore there's no jurisdiction. And yet the court then went on to say, I guess because there are two other counts that were brought against the sureties, counts one and count five. It went into a rather detailed analysis, probably one of the most detailed analysis that I've seen on the jurisdictional point and whether supplemental jurisdiction under 1367 is in fact applicable as well to the Court of International Trade. I agree with the court's reasoning below. I will be candid. It's not what we argued in the first instance below, but we accept the court's analysis because the two concepts are so interrelated. I also want to point out that count one, which along with count five, one and five were the only two counts that the court dismissed for failure to state a claim. Count five is not appealed from, so we don't need to talk about that today. Count one is a count that was brought not only against the sureties, but also against the government. And when these counts as are most of one through six are so intertwined with allegations against both the government and the sureties, it really makes no sense to say that supplemental jurisdiction under 1367 can't be exercised when the arguments are being made by the sureties, but jurisdiction exists when the same merits-based arguments are made by the government. So I would submit that this court should affirm the findings of the court below, including the finding that the court had jurisdiction to reach the standing question. And one can debate whether the standing finding is a merits finding or not. I just- Mr. Kraheim, in his response on this jurisdiction issue, said that 1583 gave the only basis for some form of supplemental jurisdiction for the Court of International Trade. Obviously, we don't agree with that. I think clearly 1583 does set forth a category of supplemental jurisdiction when you're talking about cross-claims or counter-claims or those enumerated types of claims. Third-party actions is the other category. Exactly. But there's no reason to say that 1367 is not read in harmony with 1585, particularly in this kind of circumstance. So I just want to remind the court that in the West case that was before this court in 1995, you had a very similar circumstance where this court was asked to review a merits-based ruling by the Court of International Trade. It affirmed the dismissal of claims that had been brought in the Court of International Trade. And while I have to candidly say this court did not expressly find that 1367 applied in affirming the dismissal, there is implicit exactly what we're asking you to do here. There is the same problem of you have to address does jurisdiction exist before you can get to the merits of the claim. And similarly in B. West, this court impliedly at least recognized that there was at least jurisdiction to review the merits of the claim. And I would submit the same is true here, that the Court of International Trade had jurisdiction to address the standing question and its finding that the plaintiffs had no third-party beneficiary status and therefore could not challenge  ought to be affirmed and is correct. Thank you, Ms. Gossel. Mr. Rosenthal, you have a little over a minute. Thank you. We obviously agree with our last counsel and I will add one or two more things with respect to the third-party beneficiary claim. I don't know if chutzpah is a judicially recognized term, but have Hartford come up here and make the argument that the plaintiffs are not third-party beneficiaries after they've been before Judge Lurie in their own Hartford case where they've sought to void their obligations under the bonds and quoting from their complaint that the principle in this action was obligated to pay anti-dumping duties against it to the domestic industry and the domestic industry was a direct and third-party beneficiary of the bonds. That is the Hartford's view in 30 cases of their own of the merits of the third-party beneficiary argument. That's not ours. That's theirs. We didn't file our case until after they filed theirs. They believe we're third-party beneficiaries so much so they want to void their obligations. I don't understand why the lower court did not address that issue and I urge you to address that issue because you do have jurisdiction and if you don't have it under 1367 I urge you to look at the Lujan case, excuse me, the Finley case closely and see that you really do still have ancillary pending jurisdiction there. Judge Rader, you asked about some other sites in the record about the failures or other explanations of what happened to these duties quoting the GAO report and the Treasury Department. Treasury says that one reason that Customs has not always been able to timely liquidate entries subject to the order is that quote, commerce did not always receive timely instructions from Customs where CBP did not liquidate in accordance with timely instructions where the instructions were not clearly understood. GAO report says that commerce officials noted that CBP does not always review and act upon commerce instructions in a timely manner and there are numerous instances where the CBP did not review and act on commerce instructions. These are the agencies pointing at one another for their failures to act properly under their own guidelines. We believe our complaint establishes the right to at least inquire further into their failures to act to exercise their ministerial duties. We believe the APA allows us to do that and under Twombly, we've pled enough with this record to go forward. Thank you, Mr. Rosenthal. By the way, in that complaint you cited earlier, it went on, Hartford went on to say they had no intention expressed or implied to underwrite bonds for the benefit of domestic industry. That is true, but if you look at your own... Read the whole quote. But no, no, I'm sorry. I did read the whole quote of this particular paragraph. That particular passage, they go on a little later to say we didn't had no intention to underwrite bonds for the benefit. But the point is, Your Honor, the point is if you look at your precedent here and the precedent of the Montana case, Judge Lurie was on, and other cases where you are looking at the merits of the third party law, what you say is you look at the context, you look at who is going to be benefited, whether it's named or not. The only reason I did that, Mr. Rosenthal, is so they wouldn't worry that you got the last word. We pay attention to our other cases. We have them on our computers. I read what you were saying and read further. Thank you, Mr. Rosenthal. Thank you.